IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NIKI MOTLAGH,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER ALEN GIBIC, individually and in his official capacity; SALT LAKE CITY CORPORATION, a government entity; OFFICER MADISON SISCO, individually and in her official capacity; and OFFICER LUIZ GONZALEZ, individually and in his official capacity,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION GRANTING MOTION TO DISMISS SECOND AND THIRD CAUSES OF ACTION<br><br>Case No. 2:22-cv-00635-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

Before the court is the Defendants' Motion to Dismiss the Plaintiff's Second and Third Causes of Action. (ECF No. 63.) For the reasons stated below, the court grants the motion.

BACKGROUND

This action arises out of Plaintiff Niki Motlagh's encounters with various officers of the Salt Lake City Police Department (SLCPD) in connection with a dispute between Ms. Motlagh and her former husband, Ankit Agrawal. Ms. Motlagh alleges that these officers, especially Defendant Officer Alen Gibic, sided with Mr. Agrawal even when specifically ordered by the state court to aid Ms. Motlagh in gaining access to her personal property in an apartment where she had previously resided with Mr. Agrawal.

1

The court has previously considered a Report and Recommendation (R&R) issued by United States Magistrate Judge Dustin B. Pead, who recommended that the court dismiss Ms. Motlagh's Second Amended Complaint (SAC) for failure to state a claim.  (See ECF No. 33.)  At a hearing on that motion, the court became concerned about allegations raised by Ms. Motlagh that were not contained in the SAC suggesting that the police may have treated Ms. Motlagh roughly during an encounter related to the dispute about the apartment.  Though the court granted the Defendants' motion and dismissed the SAC, the court nevertheless granted Ms. Motlagh leave to file a Third Amended Complaint (TAC) and appointed pro bono counsel to assist her.  (Order & Mem. Decision dated Dec. 19, 2023, ECF No. 47.)  The court found that Ms. Motlagh, who speaks English as a second language, struggled to communicate, and that her claims were potentially complex.  (Id. at 5.)

Now represented by counsel from Snell & Wilmer, Ms. Motlagh has more clearly presented the events related to her divorce from Mr. Agrawal in the TAC.  She asserts that Mr. Agrawal sexually and physically assaulted her on November 1, 2020; that he was arrested and charged with four felonies and one misdemeanor; and that he eventually pled guilty to two criminal misdemeanor charges and received a suspended sentence, was ordered to pay restitution, and was put on probation for 12 months.  (TAC ¶¶ 14–17, ECF No. 54.)  Upon release, Mr. Agrawal returned to an apartment that Ms. Motlagh had previously rented on her own, convinced the apartment's management to put him on the lease, and then called the SLCPD on January 25, 2021, to request a temporary protective order (TPO).  (Id. ¶¶ 12, 18 & n.1.)  The TPO was never issued, and Ms. Motlagh and Mr. Agrawal continued to live together.

Ms. Motlagh claims that, over the next few weeks, Mr. Agrawal threatened and intimidated her and that she would often scream and cry, hoping that a neighbor would report the

situation. (Id. ¶¶ 20–21.) On February 12, 2021, the pair argued after Ms. Motlagh demanded that Mr. Agrawal move out; during the fight, Mr. Agrawal called the SLCPD and told the police that Ms. Motlagh had stolen his laptop and passport. (Id. ¶¶ 22–23.) Feeling unsafe, Ms. Motlagh left the apartment and also called the SLCPD. (Id. ¶¶ 24–25.) Two officers— Defendant Officers Madison Sisco and Luiz Gonzalez—responded to the calls. (Id. ¶ 26.) Officers Sisco and Gonzalez interviewed Mr. Agrawal in the apartment, and then spoke to Ms. Motlagh outside the apartment in front of her car. (Id. ¶¶ 26, 29.) Mr. Agrawal came up to the officers during this conversation and showed them a video of Ms. Motlagh he had taken earlier in the evening. (Id. ¶ 35.) Even though Mr. Agrawal admitted that he had previously been arrested for his actions against Ms. Motlagh, and despite the lack of evidence corroborating Mr. Agrawal's claims about the fight that evening, Officers Sisco and Gonzalez detained Ms. Motlagh for a mental health evaluation. (Id. ¶¶ 27, 36, 39.) Ms. Motlagh told the officers that she had a broken wrist, but the officers nevertheless put her in handcuffs, twisted her wrist, and made her stand outside in the cold without a winter coat while they waited for an ambulance. (Id. ¶¶ 40–46.) The subsequent evaluation did not reveal that Ms. Motlagh had any mental health issues. (Id. ¶ 47.)

With nowhere else to live, Ms. Motlagh returned to the apartment. (Id. ¶ 48.) On March 7, 2021, Ms. Motlagh alleges that Mr. Agrawal tried to prevent her from leaving the apartment by standing in front of the door. (Id. ¶¶ 49–50.) Although she successfully escaped, Mr. Agrawal's foot was scraped in the process. (Id. ¶ 51.) On March 10, 2021, Mr. Agrawal obtained a TPO against Ms. Motlagh, claiming that she had kicked him in the foot and pushed him into a closet door. (Id. ¶¶ 52, 63.) He voluntarily dismissed that TPO on March 30, 2021; but two days later, Mr. Agrawal obtained a second TPO based on the same events. (Id. ¶¶ 64–

65.) On multiple occasions, the state court continued its decision about whether to convert the TPO into a protective order, as the court was waiting for the parties to file a Utah divorce action. (Id. ¶ 66.)

On July 1, 2021, Commissioner Kim Luhn entered a mutual restraining order in a previously filed Utah divorce action. (Id. ¶¶ 67–68.) But Ms. Motlagh dismissed the Utah case shortly thereafter, an action she believed was required due to a divorce case that was pending in California. (Id. ¶¶ 69–70.) Ms. Motlagh then obtained a TPO on July 9, 2021, which allowed her to "use, control and possess" the apartment. (Id. ¶¶ 71–72.) She served Mr. Agrawal with the TPO on July 13, 2021. (Id. ¶ 73.) But the next day, Mr. Agrawal obtained a separate TPO confirming that he could retain control of the apartment until the matter could be heard by Commissioner Luhn. (Id. ¶ 74.)

On July 14, 2021, Ms. Motlagh called the SLCPD and asked them to help her get back into her apartment, from which she had been excluded for several months. (Id. ¶ 76.) Officer Gibic, who responded to the call, was uncooperative—he told Ms. Motlagh to move on and refused to file a police report; he also threatened to arrest Ms. Motlagh for trespassing if she returned. (Id. ¶¶ 78–79.)

On July 19, 2021, Ms. Motlagh again called the SLCPD and asked for a female officer to help her. (Id. ¶ 80.) Although a female officer did respond to the call, Ms. Motlagh alleges that Officer Gibic accompanied the female officer and that the the female officer simply repeated everything that Officer Gibic directed her to say. (Id. ¶¶ 81–82.) Neither officer helped Ms. Motlagh to return to the apartment.

On July 29, 2021, Commissioner Luhn held a hearing on the outstanding TPOs. (Id. ¶ 86.) She entered mutual protective orders that permitted Mr. Agrawal to remain in the

apartment. (Id. ¶ 87.) Ms. Motlagh was allowed to go to the manager's officer at the apartment complex, and the SLCPD was directed to "[h]elp [Ms. Motlagh] remove essential personal belongings from the home." (Id. ¶ 88.)

Ms. Motlagh called the SLCPD on August 11, 2021, and asked for help retrieving her belongings as permitted by the mutual protective orders. (Id. ¶ 89.) Officer Gibic met Ms. Motlagh at a 7-Eleven parking lot and refused to help her. (Id. ¶¶ 90, 92.) After looking at the protective orders, he declared that the court "[did] not have a right to do this[.]" (Id. ¶ 92.) He then called Mr. Agrawal and Mr. Agrawal's attorney, who confirmed that the state court had ordered the SLCPD to help Ms. Motlagh collect her personal property. (Id. ¶¶ 93–94.) But Officer Gibic was unpersuaded, advising Mr. Agrawal that he "should not be so willing to give up his rights to the government[.]" (Id. ¶ 95.) Ms. Motlagh was never able to collect her belongings. (Id. ¶ 97.)

Ms. Motlagh eventually appealed the mutual protective orders to the district court. (Id. ¶ 98.) On August 30, 2021, Judge Chelsea Koch dismissed the protective order against Ms. Motlagh. (Id. ¶ 99.) While Judge Koch noted that the March 7, 2021 incident (in which Mr. Agrawal scraped his foot) could potentially rise to the level of good cause, the court found that Ms. Motlagh's characterization of the incident was more credible than Mr. Agrawal's. (Id. ¶¶ 100–01.) Judge Koch also noted that Mr. Agrawal had abused the protective order process. (Id. ¶ 102.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if the complaint or other pleading fails to state a claim upon which relief can be granted. The court must accept all well-pled factual allegations as true and construe them in the light most favorable to the nonmoving

party. Strauss v. Angie's List, Inc., 951 F.3d 1263, 1267 (10th Cir. 2020). But that rule does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a [party] must offer specific factual allegations to support each claim." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[T]o withstand a motion to dismiss, a [pleading] must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## ANALYSIS

In her first cause of action, which she asserts under 42 U.S.C. § 1983 against Officer Sisco, Officer Gonzalez, and Salt Lake City Corporation (Salt Lake City), Ms. Motlagh alleges that she was treated with excessive force on February 12, 2021, when Officers Sisco and Gonzalez handcuffed her, twisted her broken wrist, and made her wait in the cold. No Defendants have moved to dismiss this cause of action.

Instead, the Defendants move to dismiss Ms. Motlagh's second and third causes of action, in which she asserts that Officer Gibic and Salt Lake City violated her substantive and procedural due process rights when Officer Gibic refused to enforce the mutual protective order that instructed him to "[h]elp [Ms. Motlagh] remove essential personal belongings from the home." (Protective Order, Ex. 1 to Pl.'s Resp., ECF No. 70-1 at 4.) [1]

---

[1] Officer Gonzalez filed a separate motion to dismiss (ECF No. 80) incorporating the arguments in the Defendants' motion (ECF No. 63), as he had not yet been served when the Defendants' motion was filed. His participation is unnecessary, as Ms. Motlagh does not assert her second and third causes of action against him—or, for that matter, against Officer Sisco, who joined in the Defendants' motion to dismiss.

The court agrees with the Defendants that Ms. Motlagh has failed to state a claim under federal law for a violation of either her substantive or procedural due process rights. Taking the facts as true, Officer Gibic's actions were egregious—he refused to help Ms. Motlagh <u>even after</u> Mr. Agrawal and his attorney confirmed that the court had allowed Ms. Motlagh to retrieve her possessions from the apartment. But the Supreme Court has already examined whether a police officer's failure to enforce a protective order can be the basis of a federal due process claim. <u>See</u> <u>Castle Rock v. Gonzales</u>, 545 U.S. 748, 766 (2005) (holding that police departments have substantial discretion when enforcing protective orders and that "[i]t is by no means clear that an individual entitlement to enforcement of a restraining order could constitute a 'property' interest for purposes of the Due Process Clause").

The court previously dismissed Ms. Motlagh's due process claim with prejudice on this very basis. (<u>See</u> ECF No. 47 at 3.) Nevertheless, counsel for Ms. Motlagh argues that the TAC presents a different fact pattern: Ms. Motlagh no longer asserts that Officer Gibic failed to help her regain access to her apartment; she instead maintains that her due process rights were violated because he failed to help her regain possession of her personal property. She argues that her claims are distinct from the claims at issue in <u>Castle Rock</u> because that case focused on the police's failure to arrest someone—an action requiring more discretion than a straightforward command to help Ms. Motlagh enter the apartment and collect her things. But the court is not persuaded that this distinction is relevant, because the Supreme Court's holding in <u>Castle Rock</u> does not depend on the <u>consequences</u> of a police officer's failure to enforce a protective order.

The facts in <u>Castle Rock</u> are "horrible." 545 U.S. at 751. The respondent in that case obtained a restraining order against her estranged husband in conjunction with their divorce proceedings. <u>Id.</u> That order commanded the husband not to "molest or disturb the peace of

7

[respondent] or of any child," and to remain at least 100 yards from the family home at all times. Id.  The order also instructed the police to "use every reasonable means to enforce this restraining order[,]" including by arresting the husband or seeking a warrant for his arrest if he failed to comply with its terms.  Id. at 752.  The state trial court later made the temporary order permanent after modifying it to allow the husband certain visitation rights on alternate weekends, for two weeks during the summer, and for a midweek visit "on reasonable notice[.]"  Id.

On the evening of June 22, 1999, the husband took the respondent's three daughters while they were playing outside.  Id. at 753.  The respondent then made repeated attempts—including five phone calls and a visit to the police station—to spur the police to enforce the terms of the restraining order by tracking her husband to an amusement park where he claimed to have taken the kids and arresting him if necessary.  Id.  The respondent claimed that an officer at the station "made no reasonable effort to enforce the [restraining order] or locate the three children." Id. at 754.  In the early hours of the next morning, the husband arrived at the police station and opened fire with a semiautomatic handgun he had purchased earlier that evening.  Id.  The police killed him and then found the bodies of all three daughters in his pickup truck, whom he had already murdered.  Id.

As in Ms. Motlagh's action here, the respondent in Castle Rock asserted both substantive and procedural due process claims against the police.  See id.  Both the district court and the Tenth Circuit dismissed the respondent's substantive claim, but the Tenth Circuit found that the respondent had alleged a cognizable procedural due process claim.  Id. at 754–55.  The Supreme Court then reversed, identifying three hurdles that prevented the respondent's claim for a violation of procedural due process from rising to the level of a federally enforceable right.

8

...
...
...

First, the Court found that Colorado law allowed police officers to exercise discretion when enforcing a restraining order. Id. at 758–64. Noting that a "well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes[,]" the Court held that no provisions of Colorado law "truly made enforcement of restraining orders mandatory." Id. at 760.

Second, the Court doubted whether even stronger language in a Colorado statute would suffice to provide the respondent with a claim:

> Even if the statute could be said to have made enforcement of restraining orders "mandatory" because of the domestic-violence context of the underlying statute, that would not necessarily mean that state law gave respondent an entitlement to enforcement of the mandate. Making the actions of government employees obligatory can serve various legitimate ends other than the conferral of a benefit on a specific class of people.

Id. at 764–65. In other words, the Court found that a mandatory state enforcement statute would not necessarily provide an individual with a cause of action under that statute.

Finally, the Court expressed skepticism that the violation of a state entitlement to the enforcement of a restraining order would provide the respondent with a federal due process claim:

> Even if we were to think otherwise concerning the creation of an entitlement by Colorado, it is by no means clear that an individual entitlement to enforcement of a restraining order could constitute a "property" interest for purposes of the Due Process Clause.

Id. at 766. The Court framed the property right in question as the right to enforcement of the restraining order, a right that the Court found did not "resemble any traditional conception of property" that received constitutional protection. Id. Given these obstacles to relief, the Court held that the respondent's claims did not "trigger protections under the Due Process Clause" in either "its procedural [or] its 'substantive' manifestations." Id. at 768.

9

Ms. Motlagh has not demonstrated how the facts of her case overcome the reasoning underlying the Court's decision in Castle Rock.  She has not pointed to any Utah statute that forbids a police officer from exercising discretion in the enforcement of a restraining order.  She also fails to show that such a statute provides her with an individual cause of action, or why such a cause of action under state law would allow a federal court to enforce that entitlement.  Although she asserts that Officer's Gibic inaction led to the loss of her property, it could equally be said that the inaction of the Colorado police officers in Castle Rock led to the loss of the lives of the respondent's three daughters.  But the relevant question is not whether a police officer's failure to enforce a restraining order led to the loss of property, life, or any other consequences.  Instead, the court must determine whether Ms. Motlagh had a federally cognizable property interest in the enforcement of the restraining order.  Under Castle Rock, the court finds that she did not.

The Supreme Court noted that its decision in Castle Rock did not render states "powerless to provide victims with personally enforceable remedies." Id.  Utah is free to "create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented …." Id. at 768–69.  But Ms. Motlagh must assert her claims against Officer Gibic under that state law system (if Utah has created such remedies), not as a substantive or procedural due process claim under the federal Constitution.

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1. The Defendants' Motion to Dismiss the Plaintiff's Second and Third Causes of Action (ECF No. 63) is GRANTED.  Ms. Motlagh's claims for violation of her substantive and procedural due process rights are DISMISSED WITH PREJUDICE.

      2.      Because no claims remain against him, the court directs the Clerk of Court to dismiss Officer Alen Gibic as a defendant in this action.

      3.      Officer Luiz Gonzalez's separate Motion to Dismiss (ECF No. 80) is TERMINATED AS MOOT.

      4.      This action will proceed on Ms. Motlagh's remaining claim for excessive force against Salt Lake City and Officers Sisco and Gonzalez. The parties must comply with the forthcoming order to propose schedule that will be issued by Magistrate Judge Dustin B. Pead.

DATED this 10th day of September, 2024.

BY THE COURT:

*Tena Campbell*
Tena Campbell
United States District Judge